## In re TAMSEN.

(Supreme Court, Appellate Division, First Department.     December 10, 1897.)

1. SHERIFFS—FEES—TAXATION BY SUPREME COURT.

Where the earlier of several executions in the sheriff's hands were issued on judgments of the supreme court, and the latest one on a judgment of the city court, and the former have been satisfied in full from the proceeds of property seized and sold by the sheriff, the special term of the supreme court has no authority to tax the sheriff's fees and disbursements as against the owner of the city court judgment.

2. SAME.

The provision of Code Civ. Proc. § 3287, for the taxing of sheriff's fees by a justice of the supreme court, "on the written demand of the person liable to pay the same," is for the benefit of such person alone, and cannot be invoked by the sheriff.

Appeal from special term.

Application by Edward J. H. Tamsen, as sheriff, to tax his fees and disbursements in certain actions. From an order allowing the sum claimed, W. & J. Sloane, execution creditors, appeal. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, and INGRAHAM, JJ.

Selden Bacon, for appellants.
Charles L. Kingsley, for respondent.

INGRAHAM, J.     There were two actions commenced in the supreme court, brought by Amelia Meinhard and Emma Oppenheimer against Max Oppenheimer, which resulted in judgments in favor of the plaintiffs, and upon which, on February 3, 1897, executions were issued to the sheriff.     Subsequently, and on or about the 15th and 16th days of February, executions against the property of the defendant were issued upon judgments entered in the city court of the city of New York,—one in favor of Charles Weinberg, execution issued February 15, 1897; one by Lewis W. Hyde, Jr., execution issued February 16, 1897; and one by W. & J. Sloane, the appellants, execution issued February 16, 1897.     The sheriff took possession of the property of the judgment debtor under these executions, and on February 25, 1897, sold such property, realizing therefrom the gross sum of $7,328.75.     From the money thus received the sheriff satisfied the executions received by him prior to February 16, 1897, and the execution of Lewis W. Hyde, Jr., received by him upon that day, leaving the balance of the proceeds of such sale in his hands, after deducting his fees and disbursements, to be applied upon the execution issued upon the judgment obtained by W. & J. Sloane, the appellants.     The W. & J. Sloane judgment was for $1,423.81. The sheriff presented a bill for fees and disbursements of $1,410.40, leaving a balance in his hands of $258.07.     Some time after the sale, before the expiration of the 60 days when the sheriff was bound to return the execution issued on the Sloane judgment, the sheriff offered this sum of $258.07 to the attorney for W. & J. Sloane as the

amount applicable to the payment of their judgment, which sum the said attorney refused to receive. The matter, apparently, was there allowed to rest until the expiration of the 60 days during which the sheriff was authorized to retain the execution. Then an action was commenced against the sheriff for a failure to return said execution, in which the sheriff interposed an answer. Subsequently the sheriff made a motion before the city court to tax his fees, which was denied; whereupon the sheriff presented his bill entitled in the two actions in which judgment was entered in this court, and gave notice of application to a justice of the supreme court, at a special term, to have said bill taxed and allowed. A copy of this bill, with such application for taxation, and the affidavits upon which it was founded, was served upon the appellants, W. & J. Sloane. Upon the return of that notice, W. & J. Sloane, as judgment creditors, appeared and filed objections to the bill; first, however, taking the point that, as they had made no application in writing to have the bill taxed, neither this court, nor a justice thereof, had any power to tax the bill. The objections on behalf of W. & J. Sloane were overruled, and an order of the court entered taxing the bill and allowing the sum claimed by the sheriff. From that order of the special term of the supreme court, W. & J. Sloane appealed.

We think that the supreme court had nothing to do with the taxation of the sheriff's bill, and that the order entered was entirely unauthorized. The only actions or proceedings in the supreme court were the two actions in which the executions were issued to the sheriff on February 3, 1897, which two executions had been fully satisfied by the proceeds of the sale of the property seized by the sheriff under the executions. These two judgment creditors had no interest in the taxation of this bill of costs, as their executions had been fully satisfied; and, so far as appears by the record, they neither had notice of the application, nor did they appear before the court upon the taxation. The amount of their executions had been paid, and the judgments obtained by them had been satisfied. As to them, it was entirely immaterial whether the sheriff's bill was taxed or not, and they had no interest in the controversy between W. & J. Sloane and the sheriff as to the amount of his fees. No objection was made by any one to the application of the proceeds of the sale for that purpose, and the sheriff had been fully discharged from all responsibility to such judgment creditors. No necessity existed for an application to the supreme court to protect such judgment creditors, and no application appears to have been made as to them. Of the executions issued out of the city court, all but the one issued upon the judgment obtained by W. & J. Sloane had been satisfied, and the only ones interested in the adjustment of the sheriff's fees were W. & J. Sloane, whose judgment had been obtained in the city court, and whose execution had been issued out of that court. The special term of the supreme court had no concern with the issuance of that execution or the proceedings under it. It was a process of the city court, and whatever motion was to be made in relation to that execution, or the proceeding under it, was neces-

sarily to be made in the court from which it was issued, and which had control of the proceedings under the judgment. The order of the supreme court, therefore, assuming to tax the sheriff's fees, or to determine any controversy as between W. & J. Sloane under the judgment entered in the city court, and the execution issued thereupon, were entirely unauthorized, and should not have been granted. Nor can that order be upheld as a taxation of the sheriff's bill by a justice of the supreme court. It is clear that a justice of the supreme court had no power to tax a sheriff's bill upon an execution issued out of another court, unless such power is expressly given to him by statute. The only authority under which it is attempted to uphold this order is that contained in section 3287 of the Code of Civil Procedure. It is there provided that each sheriff who, upon the collection of an execution, claims any fees which have not been taxed, must, upon the written demand of the person liable to pay the same, cause them to be taxed within the county; upon notice to the person making the demand by a justice of the supreme court or the county judge. The authority of a justice of the supreme court, under this section, to tax a sheriff's bill, is conditioned upon the written demand of the person liable to pay the fees. Where such demand is made, the sheriff must cause his fees to be taxed before a justice of the supreme court or a county judge, and the section provides that after such demand is made the sheriff cannot collect his fees until they have been taxed. But this provision is for the benefit of the person who has to pay the fees, and not for the benefit of the sheriff. The sheriff has the property or its proceeds in his hands, and he has the power to either satisfy his fees or hold the property in his hands until the same are paid, without any taxation. If his bill for fees, as presented by him, is not objected to by the creditor, he has ample power to collect it. If such bill is objected to by the creditor, he must demand in writing that it be taxed, and then the sheriff is bound to have it taxed in the way provided by the section cited. The necessity of such a taxation only arises when the creditor objects to the sheriff's bill, and, in order to make that objection effectual, the person liable to pay the fees must serve upon the sheriff a written demand that such fees be taxed; but, until such demand is made, the sheriff's bill, as presented, is presumed to be acceptable to the judgment creditor or person who is bound to pay it. In this case the sheriff had the proceeds of the sale of the property levied upon under the executions in his hands, and he had the right to apply the proceeds to the payment of his fees and disbursements. If the creditor refused to receive the balance of such proceeds after the payment of the sheriff's bill, he had simply to return the execution, crediting the amount in his hands which the creditor had refused to accept, and then wait until the judgment creditor served the notice required by law to require the sheriff to have his bill taxed. The sheriff saw fit to simply retain the execution, which rendered him liable to an action by the judgment creditor for a failure to return the execution as required by law; but with that action the court had nothing to do, except to try that action upon the pleadings.

We think, therefore, that the order appealed from was entirely unauthorized, and that it should be reversed, with $10 costs and disbursements, and the application denied, with $10 costs. All concur.

---

NEW YORK CENT. & H. R. R. CO. v. HAFFEN et al.

(Supreme Court, Appellate Division, First Department. December 10, 1897.)

1. MUNICIPAL CORPORATIONS—OPENING STREETS—INJUNCTION—PRACTICE.
    Although the filing by the municipal authorities of maps showing proposed streets through private property cannot be enjoined at the instance of the owner, yet, if an action brought for that purpose seeks generally to prevent the taking of plaintiff's land for streets, plaintiff should be allowed, under Code Civ. Proc. § 544, to serve a supplemental complaint setting forth subsequent steps taken by the authorities to lay out the streets, which were alleged in the original complaint as threatened or intended.

2. SAME.
    This principle applies notwithstanding the existence of an act of the legislature authorizing the construction of a part of the improvements in question.

Appeal from special term.